## CIRCUIT COURT OF WASHINGTON COUNTY

Gentry Blackwell

 v.

Department of Motor Vehicles

### May 16, 1989

By JUDGE CHARLES H. SMITH, JR.

This matter was heard in this court on May 2, 1989, with all parties present. The court heard the evidence of numerous witnesses, reviewed several exhibits, and heard argument of counsel. At the conclusion of the hearing, the court announced that it would take the matter under advisement and render a written opinion.

As noted in a previous opinion█ regarding this matter, the court's jurisdiction herein derives from § 2.1-114.5:1 of the Code. The scope of the court's jurisdiction in these matters is very narrow and is prescribed in that Code section.

The grievant herein filed his grievance alleging departmental irregularity in the failure to promote him to the position of District Manager. Generally speaking, the issue of failure to promote is nongrievable. However, it is grievable if the grievant can show that established promotional policies or procedures were not followed or fairly applied. This was the narrow scope of this court's inquiry, and the evidence was limited accordingly. Further, the authority of the court upon a finding for the grievant extends only to requiring the agency to allow the grievant his final step in the grievance process, a panel hearing.

█ 

The main thrust of the grievance complaint herein is centered on the allegation that the Department's established promotional policies and procedures were not followed or fairly applied in his case because of pre-selection. The position to which the grievant was seeking a promotion, that of District Manager of district one, became available upon the forced retirement of the District Manager due to criminal prosecution for embezzling state funds. The grievant knew that District Manager very well and had worked with him out of the Bristol office for many years. The grievant contends that when this position was initially advertised, the Bristol office was still contaminated by the cloud created by the former District Manager and caused management to predetermine not to hire anyone from the Bristol office for that position. If this be so, it would certainly smack of pre-selection and would taint the entire selective process. In support of his contention, the grievant alleges that two members of the Virginia House of Delegates who wrote letters of recommendation for him were told by management that this was the case. However, neither of these gentlemen testified at the hearing, and both the Commissioner and Deputy Commissioner of the Department denied ever having made such assertion. In addition, the Commissioner and Deputy Commissioner both testified unequivocally that the scandal of the previous District Manager did not mark anyone from the Bristol office nor cause management to predetermine not to hire anyone from that office. Indeed, Mr. B. S. Barker, one of the panel members who interviewed the grievant, testified that he was not even aware of that scandal.

Next, the grievant contends that his position is further supported by the fact that he was notified that he did not get the promotion before the selection process was completed. Specifically, he points to the fact, which is not denied, that he was notified before the Department's "ERO 3" form was completed. This form is apparently an in-house form used by the DMV and must be signed off on by all those participating in the selection process once they have concluded their work. The three witnesses mentioned above, who were called as adverse witnesses by the grievant, all testified concerning the established promotional policies and procedures of the Department and howin they were applied in this case. All three testi-

fied that the "ERO 3" is not prepared simultaneously with the interview of the applicant and that it is not unusual for applicants to be notified prior to the completion of this form. It was pointed out that after the interview, some discussion takes place, a consensus is reached and then one of the panel members must take the responsibility for completing the "ERO 3" and securing the signatures of the other participants. Thus, while the decision may have been made and the applicants orally notified, it is conceivable that obtaining the signatures for the form may take several days.

Counsel has argued, and with some persuasion, that this selection process had to be tainted because, when you consider the grievant's record and match his qualifications with the job description, it is difficult to imagine how anyone else could have been chosen. The court, as noted, is not here to evaluate the relative qualifications of the grievant for the job he was not promoted to. Obviously, he was and is imminently qualified. His qualifications were recognized and validated when he was selected as one of seven persons for the panel interview. his qualifications were further recognized and validated when he was selected as one of the final three for interviews with the Deputy Commissioner. He may be, on paper, better qualified than the person chosen. However, there are an infinite number of factors that are taken into consideration by management in making such an important selection, and this court cannot substitute its judgment for their expertise. This court is now asked to declare their efforts were just a sham, a "going through the motions" type of thing. To do so would be to attribute to the officers of this Department and the panel members the implication of a conspiracy and the application of a charade. The evidence just does not bear this out.

The court cannot find that the Department's established promotional policies or procedures were not followed or fairly applied in this situation.